# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### NEW HAVEN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| ANTHONY SEALY | : | CASE NO. 10-33801 (AMN) |
| | : | |
| DEBTOR | : | SEPTEMBER 22, 2017 |

## DEBTOR'S REQUEST FOR ENTRY OF DISCHARGE

Anthony Sealy, the Chapter 11 Debtor herein, respectfully requests that the Bankruptcy Court enter an order granting his bankruptcy discharge. In support of his request, the Debtor states as follows:

1.  On December 23, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Then-attorney Peter Ressler assisted in the filing of the bankruptcy petition, schedules and statements and represented the Debtor through confirmation of his Modified Second Amended Plan of Reorganization on November 12, 2013 and thereafter.

2.  On January 29, 2014, the Debtor applied for entry of a final decree in his Chapter 11 case which final decree was entered by the Bankruptcy Court on March 6, 2014.

3.  At the time the final decree was entered by the Bankruptcy Court, the Debtor was current with the filing of his Monthly Operating Reports and the payment of his Chapter 11 Quarterly Fees.

4.  The Debtor had fallen behind on post-confirmation mortgage payments. He has made those obligations current (see attached Exhibit A).

5.   The Debtor has entered into a proposed loan modification for the property known as 46-48 Westwood Road, New Haven, Connecticut.  The secured lender has agreed to the modification only if the Debtor receives his Chapter 11 discharge. (See Exhibit B).

6.   The Debtor continues to make payments due under his Modified Second Amended Plan of Reorganization or has made post-confirmation agreements with creditors for different treatment from that accorded in the Modified Second Amended Plan of Reorganization.

7.   This Court has previously explored the possibility of the Debtor obtaining a discharge.  Originally the request was premature. (See ECF #400, July 5, 2017 and ECF #365 February 22, 2017).

8.   Relief from Stay has been granted as to certain properties held by the Debtor when the Debtor had fallen behind.

9.   The Debtor files this request pursuant to 11 U.S. C. §1142(d)(5)(B) and (c) because the creditors have been provided the value of their claims on the effective date and modification of the Plan under Section 1127 is not practicable.  The Debtor has not been convicted of any felony.

10. Pursuant to 11 U.S. C. §1142(d)(5)(B), the Debtor requests that the Bankruptcy Court set down a hearing on the Debtor's request for entry of his bankruptcy discharge for a hearing at the Court's earliest convenience which is compatible with the appropriate rules of notice and service and, after that hearing, to enter the  undersigned's bankruptcy discharge so that he may have the fresh start promised to honest debtors by the United States Bankruptcy Code.

WHEREFORE, the Debtor respectfully request that the Court enter an order (i) discharging the Debtor from his pre-petition debts and claims and (ii) granting such other relief as the Court finds appropriate.

Respectfully submitted
on behalf of the Debtor,


By:  /s/ Suzanne B. Sutton (ct03506)
Suzanne B. Sutton, Esq.
Cohen and Wolf, P.C.
657 Orange Center Road
Orange, CT 06477
(203) 298-4066
Fed. Bar No.: ct 17186
Email:  ssutton@cohenandwolf.com

# EXHIBIT A

**OFFICIAL CHECK**

40802571-0

 **Bank**

$\frac{52\text{-}0133}{112}$

RE: OHS CONSTRUCTION LLC

DATE: 09/11/2017

$63,000.00

PAY TO THE
ORDER OF ANTHONY SEALY

Sixty Three Thousand  AND 00/100

DRAWER: TD BANK, N.A.

The Bank will not stop payment on this Official Bank Check and reimburse the
purchaser or issue a replacement until the purchaser or payee signs a Declaration
of Loss and more than 90 days have passed since the date of issue.

**NON NEGOTIABLE**
AUTHORIZED SIGNATURE

Security
Features
Details on
Back

Sherman Ave. ) payment in full
Parmalee    ) on arrears.

 **Bank**

# Domestic Wire Transfer

| | |
|---|---|
| **Initiator:** *Madia Li Banks-Battle* | **Date:** 09/11/2017 |
| **Initiator's Ph #*:** *(203) 891-0524* | **Reference Number:** 0420 |
| **Approver's Name :** Claudia V Frias | **Wire Status:** Pending Branch Approval |

| **Wire Amount** | **Customer's Bank Code** | **Branch Bank Code** | **Branch #** |
|---|---|---|---|
| $32,536.10 | 004-TD BANK N.A. | 004-TD BANK N.A. | 536 |

**Same Day Deposit?***

No

**Wire Type**  ·  **Account Type**

Wire Transfer   ☐ Check if Federal Tax Payment   Business

## ORIGINATOR

| **Customer Name*** | **Customer Account Number*** |
|---|---|
| Ohs Construction Llc | 4334379545 |

| **Beneficiary Name*** | **Beneficiary Account Number*** |
|---|---|
| Ocwen Loan Servicing Llc Itf | 4124823352 |

| **Beneficiary Address 1*** | **Beneficiary Address 2** |
|---|---|
| 1010 W Mockingbird LN | Suite 100 |

| **Beneficiary City*** | **Beneficiary State / Zip Code** |
|---|---|
| Dallas | TX 75247 |

| **ABA Number*** | **Receiving Bank Name*** |
|---|---|
| 121000248 | WELLS FARGO BANK, NA |

## SPECIAL INSTRUCTIONS

**Further Credit Bank Name**


**Further Credit Comments (Max 140 Characters)**

REF: Anthony Sealy Loan# 7090249744 280 West Ivy St.
New Haven CT 06511


**CUSTOMER REQUESTING**  ·  **APPROVED BY**

_____        _____
(Signature)                                (Signature)

Ohs Construction Llc

**Notices & Disclaimers:**  Placeholder for disclaimer



# EXHIBIT B



Wells Fargo Home Mortgage
Return Mail operations
PO Box 10388
Des Moines, IA 50306-0388

**JUNE 23, 2017**

**ANTHONY SEALY**
**25 PARMALEE AVE**
**NEW HAVEN, CT 06511**

PLEASE NOTE: This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the above referenced account, **Wells Fargo Home Mortgage** is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S).

**Subject line: Instructions for our Free Notary Signing Service**

**Loan number: 0534221395**

**Dear ANTHONY SEALY:**

**What you need to know:**

I'm pleased to let you know that you have successfully completed the trial for a loan modification and you've been approved. As a reminder, your original documents are being modified and are not being refinanced into a new loan.

In order to finalize your modification, you'll need to sign the enclosed documents and have them notarized. We're making that process simpler for you with the following steps:

- **A notary will contact you for your free notary signing service.** For your convenience, a notary will call you at the phone number we have on file to arrange a convenient time for you to sign the documents. If the notary does not reach you, please call back as soon as possible to set up a time to sign your modification documents. Please note: If a notary has not contacted you within 3 business days of you receiving this package, please reach out to me, and request your notary's contact information.

- **Look over the enclosed modification documents.** These documents are for your records; your notary will bring the official documents that need to be signed.

- **Contact me with any questions.** If you have questions, please call me prior to setting up your signing appointment. Your notary will not be able to answer any questions concerning your modification documents.

- **Bring identification to your appointment.** When you meet with the notary, bring a valid, government-issued ID for identification purposes, such as a driver's license, state ID card, or a passport. The notary needs to ensure that your identification matches the name on the documents.

**I'm here to help**
As your home preservation specialist, I'm here to help. If you have any questions about the information in this letter or need to update your phone number, you can reach me at **855-844-4527 ext. 1335520295**. If I'm not immediately

Wells Fargo Custom Non HAMP 05182017_368

708 

available, please call **855-844-4527** and someone else will be available to assist you, Monday - Friday, 7:00 a.m. to 7:00 p.m., Central Time.

Sincerely,
**RANDALL MCNEAL**
**Home Preservation Specialist**
**855-844-4527 ext. 1335520295**
**Wells Fargo Home Mortgage**

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2016 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Wells Fargo Custom Non HAMP 05182017_368

708



**JUNE 23, 2017**

**ANTHONY SEALY**
**25 PARMALEE AVE**
**NEW HAVEN, CT 06511**

| Account Information | |
|---|---|
| **Online:** | yourwellsfargomortgage.com |
| **Fax:** | 1 (866) 359-7363 |
| **Telephone** | 1 (800) 416-1472 |
| **Correspondence:** | PO Box 10335 |
| | Des Moines, IA 50306 |
| **Hours of Operation:** | Monday – Friday, 8am – 5pm |
| | Central Time |
| | |
| **Loan Number:** | (scan barcode) |
| **Property Address:** | **46-48 WESTWOOD RD** |
| | **NEW HAVEN,** |
| | **CONNECTICUT 06515** |

**Dear ANTHONY SEALY**

**Subject**: Your Loan Modification Agreement.

**Congratulations!** Enclosed is your Loan Modification Agreement (Agreement). This Agreement will reflect the terms of your modified mortgage. It is important to note that your original documents are being modified and are not being refinanced into a new loan. Please read this letter so that you understand all the steps you need to take to complete your modification of your mortgage loan.

PLEASE NOTE: This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the above referenced account, **Wells Fargo Home Mortgage** is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S). Your decision to discuss workout options with **Wells Fargo Home Mortgage** is strictly voluntary. You are not obligated to pursue any workout options discussed with us. At your request, we will immediately terminate any such discussions should you no longer wish to pursue these options.

**What you need to know:**

**1. What you need to know about Borrower Representations**
This section confirms you're experiencing a hardship along with other important information about your home and current loan which you provided to us. This was used to help you qualify for a loan modification. In addition this section explains that the new terms of your loan modification do not apply until you've signed the Agreement and we have signed it as well. A copy of the Agreement signed by you and by us will be provided to you.

**2. What you need to know about The Modification**
This section outlines the terms of your loan modification, and identifies what will change on your mortgage loan. You will see your outstanding balance, interest bearing principal, unpaid balance, deferred interest, fees, monthly mortgage payment and the maturity date.

**3. Your loan Modification Terms**

Wells Fargo Custom Non HAMP 05182017_368

This section details the changes you will see to the terms of your loan. Changes may include your contractual due date and extended maturity date. Please review this section to understand all of the changes to your modified loan.

**What you need to do next:** To complete your modification, you will need to sign and return the following documents along with the payment, if required, by **JULY 8, 2017** in the enclosed, prepaid overnight envelope.

- One signed and dated copy of the Agreement. Keep the other copy for your records.
- Notice of Special Flood Hazard Area (SFHA), if enclosed.

  **Wells Fargo Home Mortgage**
  1000 Blue Gentian Road
  Suite 300
  MAC X9999-01N
  Eagan, MN 55121

If you do not sign and return all of the above-referenced documents, by **JULY 8, 2017** and you still wish to be considered for a modification, you must contact us immediately.

**Important information:**
- All mortgagors need to sign their name exactly as it is printed on the documents in blue or black ink.
- If one of the mortgagors listed should not be required to sign the documents OR has a different name than what is listed on the documents, please provide the appropriate documentation that supports this change. Acceptable documents may include a death certificate, divorce decree along with a recorded Quit Claim Deed, or marriage certificate.
- If all pages of the above documents and payment, if required, are not received or if you have not contacted us by **JULY 8, 2017**, we will conclude that you are no longer interested in modifying your existing loan and will cancel your request for a modification. Until we receive the signed and completed documents, we are unable to complete the modification; we will continue to service your mortgage loan – which may include continued collections communications via telephone calls and/or letters and any legal proceedings.

**Details of your loan modification Agreement:**

|     |                                                  |                      |
| --- | ------------------------------------------------ | -------------------- |
| 1.  | Due date of first payment:                       | **FEBRUARY 1, 2017** |
| 2.  | New principal balance:                           | **$289,403.99**      |
| 3.  | New principal and interest monthly payment amount: | **$1,121.12**      |
| 4.  | Escrowed real estate taxes monthly amount:       | **$534.20**          |
| 5.  | Escrowed property insurance monthly amount:      | **$195.03**          |
| 6.  | Escrowed shortage monthly amount:                | **$43.81**           |
| 7.  | Total monthly escrow payment:                    | **$773.04**          |
| 8.  | Total modified monthly payment:                  | **$1,894.16**        |
|     | This payment amount includes principal, interest, and if applicable, escrow and escrow shortage amounts. | |
| 9.  | New maturity date:                               | **JANUARY 1, 2057**  |
| 10. | New interest rate:                               | **3.5000%**          |

I look forward to hearing from you by **JULY 8, 2017**, and if you have any questions please call me at the phone number in the account information box at the top of the letter.

Sincerely,
**RANDALL MCNEAL**
**Home Preservation Specialist**
**855-844-4527 ext. 1335520295**
**Wells Fargo Home Mortgage**

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2016 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801

Wells Fargo Custom Non HAMP 05182017_368

708

**SUMMARY**    Here is a summary of your modified mortgage.

**New Principal Balance.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, property insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **If you fulfill the terms of this agreement at the time of modification, we will waive all late charges that have accrued and remain unpaid.**

**Unpaid Principal Balance.** Current Unpaid Principal Balance of your loan remaining as of **JANUARY 11, 2017.** The Unpaid Principal Balance does not include unpaid interest, real estate taxes, property insurance premiums, or assessments paid on your behalf to a third party. **If you fulfill the terms of this agreement at the time of modification, the Unpaid Principal Balance will be replaced with the New Principal Balance.**

**Interest Rate.** The interest rate on your modified loan will be adjusted as noted in the attached Loan Modification Agreement.

**Term Extension.** To reduce your mortgage payment, we may extend the term of your mortgage. This means we may spread your payments over a longer period.

**Escrow Account.** The terms of your modification agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your real estate taxes, property insurance premiums and other required fees. Upon acceptance of the offer, any prior waiver of escrows by your lender is no longer in effect. **Wells Fargo Home Mortgage** will draw on this account to pay your real estate taxes and property insurance premiums, as they come due. Please note after your modification is complete, your escrow payment amount will adjust at least annually if your real estate taxes, property insurance premiums and/or assessment amounts change, so the amount of your monthly payment that **Wells Fargo Home Mortgage** must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be **$773.04**, which contains the separate escrowed amounts listed above. This amount is included in the loan payment noted in Section 2 of the enclosed modification Agreement; you do not need to remit this amount separately.

**Escrow Shortage.** Due to the timing of your real estate tax and property insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of **$2,628.65.** You may pay this amount over a 5-year (60 months) period. This additional **$43.81** a month has already been included in the monthly escrow payment stated above and in the loan payment noted in Section 2 of the enclosed modification Agreement.

**Change To Biweekly Payment Loans.** If the Loan is a biweekly loan, through the enclosed Agreement, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

This Document Prepared By:
**LENG XIONG**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.**
**DTO – MAIL STOP 3-2-8**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA  92707-9991**

Tax/Parcel #: 24205

_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: $202,500.00                Investor Loan No.:1697062387
Unpaid Principal Amount: $183,949.42                 Loan No: (scan barcode)
New Principal Amount $289,403.99
Total Cap Amount: $105,454.57

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: **JANUARY 11, 2017**
Borrower ("I"):[1] **ANTHONY SEALY**
Borrower Mailing Address: **25 PARMALEE AVE, NEW HAVEN, CT  06511**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **AUGUST 27, 2004** and the Note
("Note") date of **AUGUST 27, 2004**
Property Address ("Property"): **46-48 WESTWOOD RD, NEW HAVEN, CONNECTICUT 06515**

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**Prior instrument reference: Recorded on SEPTEMBER 1, 2004 in INSTRUMENT NO. 2004-18217**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

Wells Fargo Custom Non HAMP 05182017_368                                    708 ‖‖‖‖‖‖‖‖‖‖‖

**BOOK 6924  PAGE 219, of the Official Records of TOWN OF NEW HAVEN , CONNECTICUT**

This Loan Modification Agreement ("Agreement") is made on **JANUARY 11, 2017** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1.  **Borrower Representations.**

    I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

    B.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

    C.  If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

    D.  I have made or will make all payments required within this modification process;

    E.  In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

    F.  Borrower filed for relief under Chapter 11 of the United States Bankruptcy Code on **DECEMBER 23, 2010**.

    G.  This agreement is only valid once consent of the United States Bankruptcy Court or other



applicable approval to modify this mortgage is received.

H.   Prior to filing for relief under the United States Bankruptcy Code, Borrower agreed to repay the
above referenced loan pursuant to the Loan Documents between Lender and Borrower. Such
agreement granted Lender a valid security interest and an enforceable lien on the property securing
the loan.

I.   Notwithstanding anything to the contrary contained in this Agreement, Borrower acknowledges that
Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by
the Loan Documents under appropriate circumstances. Borrower and Lender agree that the
consideration for this Agreement is Lender's forbearance from presently exercising its rights and
pursuing its remedies under the Loan Documents as a result of Borrower's default thereunder.
Nothing in this Agreement shall be construed to be an attempt to collect against Borrower
personally or an attempt to revive personal liability.

J.   Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security
interest and lien are still valid and enforceable.

K.   Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement,
and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no
coercion or pressure from Lender, for the sole purpose of retaining the Property.

2.   **The Modification**.

A.   The modified principal balance of the Note will include amounts and arrearages that will be past
due as of the Modification Effective Date (which may include unpaid and deferred interest, fees,
escrow advances and other costs, but excluding unpaid late charges, valuation, property
preservation, and other charges not permitted under the terms of this modification, collectively,
"Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified
loan. The new principal balance of my Note will be **$289,403.99** (the "New Principal Balance").
Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the
added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.
Borrower also understands that this means interest will now accrue on the unpaid Interest that is
added to the outstanding principal balance, which would not happen without this Agreement.

B.   Interest at the rate of **3.5000%** will begin to accrue on the New Principal Balance as of **JANUARY
1, 2017** and the first new monthly payment on the New Principal Balance will be due on
**FEBRUARY 1, 2017** Interest due on each monthly payment will be calculated by multiplying the
New Principal Balance and the interest rate in effect at the time of calculation and dividing the
result by twelve (12).   My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 480 | 3.5000% | 01/01/2017 | $1,121.12 | $773.04 | $1,894.16 | 02/01/2017 |

**\* This includes an escrow shortage amount to be paid over the first 60 month term. After your
modification is complete, escrow payments adjust at least annually in accordance with
applicable law; therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3.   **Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A.   The current contractual due date has been changed from **JULY 1, 2012** to **FEBRUARY 1, 2017.** The first modified contractual due date is **FEBRUARY 1, 2017.**

B.   The maturity date is **JANUARY 1, 2057.**

C.   The amount of Recoverable Expenses* to be capitalized will be U.S. **$1,480.00.**

*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D.   Lender will forgive outstanding Other Fees U.S. **$0.00**. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E.   Lender will forgive outstanding NSF Fees U.S. **$0.00.**

F.   Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$279.72.**

G.   The amount of interest to be included (capitalized) will be U.S. **$62,505.96.**

H.   The amount of the Escrow Advance to be capitalized will be U.S. **$41,468.61.**

4.   **Additional Agreements.**

I agree to the following:

A.   If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B.   If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C.   **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain



priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

    D.    That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the

modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E.   If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. ***Exception:*** In the state of California, Life, A&H, and IUI insurance <u>must</u> be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

F.   If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

G.   If the Borrower's home owners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

H.   If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I.   If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J.   If Borrower fails to pay Lender the amount due and owing or to pay any monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. These remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note as modified herein, which has been discharged in bankruptcy.

K.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

L.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

Wells Fargo Custom Non HAMP 05182017_368                                    708 

M.  CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

N.  If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

O.  All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

P.  This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

Q.  In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

R.  If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

S.  Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **JANUARY 1, 2017.**

T.  I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

U.  Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement



by **JULY 8, 2017.** If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

V.   If the security property is an investment property or 2-4 unit principal residence: Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Wells Fargo Custom Non HAMP 05182017_368

708

Page 8

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

W. Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about my modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

X. Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

Y. **This Agreement modifies an obligation secured by an existing security instrument recorded in TOWN OF NEW HAVEN , CONNECTICUT, upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $183,949.42. The principal balance secured by the existing security instrument as a result of this Agreement is $289,403.99, which amount represents the excess of the unpaid principal balance of this original obligation.**

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

In Witness Whereof, I have executed this Agreement.

_____    _____
Borrower: ANTHONY SEALY                                          **Date**

_____                    _____
                          1st Witness                                          1st Witness

_____                    _____
                          2nd Witness                                         2nd Witness

_____    [Space Below This Line for Acknowledgments]    _____

**BORROWER ACKNOWLEDGMENT**

STATE OF **CONNECTICUT**
TOWN OF _____

On this the _____ day of _____, _____, before me
_____ (name of notary), personally appeared **ANTHONY SEALY,** known to me (or
satisfactorily proven) to be the person(s) whose name(s) _____ ( is or are) subscribed to the within
instrument and acknowledged that _____ (he/she/they) executed the same for the
purposes therein contained.

In witness whereof I hereunto set my hand.

Date:_____

_____
Notary Public

Print Name:_____

My commission expires: _____

In Witness Whereof, the Lender have executed this Agreement.

**WELLS FARGO BANK, N.A.**

_____    _____    _____
By: (print name)                                                    (sign)                              Date
     (title)

_____            _____
           Witness                                                    Witness

_____            _____
   Witness – Printed Name                              Witness – Printed Name

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

**STATE OF MINNESOTA**

**COUNTY OF** _____

This instrument was acknowledged before me _____(date) by

_____ (name(s) of person(s)) as _____ (type

of authority, e.g., officer, trustee, etc.) of **WELLS FARGO BANK, N.A.** (name of party on behalf of whom

the instrument was executed).

_____
Notary Public

Printed Name: _____

My Commission Expires:

_____

## EXHIBIT A

**BORROWER(S): ANTHONY SEALY**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

The land referred to in this document is situated in the STATE OF CONNECTICUT, COUNTY OF NEW HAVEN, CITY OF NEW HAVEN, and described as follows:

KNOWN AND NOS. 46 AND 48 WESTWOOD ROAD, BOUNDED AND DESCRIBED AS FOLLOWS:

NORTHERLY: 40 FEET, MORE OR LESS, BY WESTWOOD ROAD;

EASTERLY: 148 FEET, MORE OR LESS BY LAND FORMERLY OF ROSWELL GRANT, MORE LATELY OF A. KENT ROPER;

SOUTHERLY: 40 FEET, MORE OR LESS, BY LAND FORMERLY OF ADOLPH PERLROTH AND OTHERS, MORE LATELY OF FREDERICK MERCHTERSHEIMER; AND

WESTERLY: 147.11 FEET, MORE OR LESS, BY LAND FORMERLY OF ADOLPH PERLROTH AND OTHERS, MORE LATELY IN PART BY LAND NOW OR FORMERLY OF WILLIAM M. FEEGAN AND CATHERINE A. FEEGAN, IN PART BY LAND NOW OR FORMERLY OF MAURICE KENT AND CATHERINE KENT, IN PART BY LAND NOW OR FORMERLY OF JOSEPH P. SEXTON, AND IN PART BY LAND NOW OR FORMERLY OF FRANK WILSON, SAID WESTERLY LINE BEING A STRAIGHT LINE.

ALSO KNOWN AS: 46-48 WESTWOOD RD, NEW HAVEN, CONNECTICUT 06515

Date: **JANUARY 11, 2017**
Loan Number: **(scan barcode)**
Lender: **WELLS FARGO BANK, N.A.**

Borrower: **ANTHONY SEALY**

Property Address: **46-48 WESTWOOD RD, NEW HAVEN, CONNECTICUT 06515**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____          _____
Borrower:                                                                                                           Date
**ANTHONY SEALY**

Date: **JANUARY 11, 2017**
Loan Number: **(scan barcode)**
Lender: **WELLS FARGO BANK, N.A.**

Borrower: **ANTHONY SEALY**

Property Address: **46-48 WESTWOOD RD, NEW HAVEN, CONNECTICUT 06515**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **WELLS FARGO BANK, N.A.**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____    _____
Borrower: **ANTHONY SEALY**                                                                 **Date**

Wells Fargo Custom Non HAMP 05182017_368

Page 14

708



1000 Blue Gentian Rd  Suite 300
MAC Code 9999-01N
Eagan, MN 55121

# Important Signing Instructions

This page contains a checklist and instructions for both the borrower and the notary. Please read all instructions prior to signing and notarizing the modification and supporting documents.  These documents must be signed in the presence of a notary. Each set contains pages that the notary must complete, notarize and stamp. Please follow and check off the items during the signing.  Failure to follow instructions may result in a delay in the closing of your modification.

**Notary Requirements:**

☐ There must be 2 sets of documents provided to be completed and notarized. **Note:** Each set also includes the Loan Modification Agreement. The mortgagor(s) must sign the Loan Modification Agreement along with the Compliance Agreement (if enclosed).

    ○ **Note:** FHA/VA/USDA will require the borrower to sign 1 set of documents

☐ Black ink is required.

☐ Notary's acknowledgement must list mortgagor(s) name exactly as it/they appear(s) on the modification documents.

☐ Stamp must be located below the Borrower Acknowledgement section on the Acknowledgment page. **Note:** The Lender Acknowledgement section is to be filled out by the Lender.

☐ Stamp and signature must be within the doc margins.

☐ Stamp and all other information must be legible.

☐ Stamp and signature must not cover any verbiage.

☐ State and county must be completed.

☐ Must be dated by the borrower and by the notary – dates must match.

☐ If the Notary marks the incorrect date and must make a correction, please make one strike through of the incorrect date, correct and initial.

☐ Notary must provide date when their commission expires when they notarize the Borrower Acknowledgement section of the modification documents.

☐ Must include notary's printed name both under their signature and after the "before me" verbiage.
☐ Do not print the borrower's driver's license or other identification document numbers on the actual modification and/or supporting documents.

☐ There may be other enclosed documents and/or affidavits. Please ensure that those are read, signed, notarized and dated correctly when returning the package.

**Borrower Requirements:**

☐ There must be 2 sets of documents provided to be completed and notarized. **Note:** Each set also includes the Loan Modification Agreement. The mortgagor(s) must sign the Loan Modification Agreement along with the Compliance Agreement (if enclosed).

    o   **Note:** FHA/VA/USDA will require the borrower to sign 1 set of documents

☐ Black ink is required.

☐ Signatures must match printed names.

☐ Borrower(s) must date where indicated.

☐ If the borrower(s) need(s) to correct a signature or date that they signed or dated in error; they can correct the error but must initial next to the correction.

☐ Depending on the state, witness signatures may be required. All signing parties must neatly print their names below their original signatures (Mortgagors, Notaries, Witnesses, Etc.). **Note:** The notary can be a witness, except in the state of Louisiana. They must sign in both the witness and the Borrower Acknowledgement sections.

☐ **IMPORTANT:** There may be additional enclosed documents and/or affidavits. Please ensure that those are read. There may be times when they need to be signed, initialed, notarized and dated correctly when returning the package.

    o   **Some Examples are but not limited to:**

        ☐ Maryland Affidavits.

            ☐Affidavit of Principal Balance.

            ☐Prince George's County Finance Affidavit

        ☐ Rent Rider

        ☐ Addendums



# Preferred Payment Plan<sup>SM</sup> Authorization Form

*Match your mortgage payments to your payday cycle*

As part of your loan modification, please complete this form. Managing your mortgage payments is easy when you enroll in the *Preferred Payment Plan*. Simply choose the option below that matches your personal payday cycle, and your monthly payments will be withdrawn automatically from your checking or savings[1] account. The *Preferred Payment Plan* is free, secure and more convenient than writing checks and mailing payments.

**Please note: Enrolling in the *Preferred Payment Plan* does not change the principal and interest payment arrangement specified in your mortgage loan documents. Withdrawn funds will be applied to your mortgage when sufficient funds have accumulated to make a full monthly payment as outlined in your mortgage note.**

**To enroll in the *Preferred Payment Plan*, follow the steps below and fax this signed form to 1-866-287-6241.**

### 1. Select the *Preferred Payment Plan* option that matches your pay schedule

Please check the appropriate box to mark your choice. If this form is signed but no option is selected, you will be set up for monthly withdrawals on your due date.

*If you choose either the Weekly or Bi-weekly option, withdrawals in addition to the amount needed to cover your monthly mortgage payments will naturally occur 2 to 5 times per year. The additional withdrawn funds will be automatically applied to your principal balance – helping you pay off your mortgage faster.*

☐ **Weekly:** One-quarter of your monthly payment will be withdrawn every week, including principal, interest, applicable tax and insurance payments. In a year's time, 52 withdrawals will be made.
**Request a withdrawal start date** *(must be Monday-Friday and 4 weeks prior to due date):* _____ / _____ /_____

☐ **Bi-weekly (every other week):** Half of your monthly payment amount will be withdrawn every other week, including principal, interest, applicable tax and insurance payments. In a year's time, 26 withdrawals will be made.
**Request a withdrawal start date** *(must be Monday-Friday and 3 weeks prior to due date):* _____ / _____ /_____

☐ **Semi-monthly (twice a month):** Half of your monthly payment will be withdrawn on the 15th of the month prior to the due date, and the second half of your monthly payment will be withdrawn on the 1st of month in which payment is due. Each withdrawal will equal one-half of the total monthly payment due, including principal, interest, applicable tax and insurance payments. In a year's time, 24 withdrawals will be made.

☐ **Monthly:** Your monthly payment amount will be withdrawn on your due date (usually the 1st day of every month) or up to 4 days after your due date. The withdrawal amount will equal the total monthly payment due, including principal, interest, applicable tax and insurance payments.

**Please select day for withdrawal:** ☐ Due Date ☐ 1 day after ☐ 2 days after ☐ 3 days after ☐ 4 days after

### 2. Specify additional principal, if any

You can choose to add an additional amount to each of your electronic withdrawals to be applied to your outstanding loan principal.

☐ Yes, please add $_____to each of my automatic electronic withdrawals.

### 3. Supply your account information

Account type: ☐ Checking    ☐ Savings[1]

Customer Bank Routing Number:_____    Customer Bank Account Number:_____
(9-digit number at the bottom left of your check)                (To the right of the Bank Routing Number on your check)

### 4. Signature

By signing below, I agree to the Terms and Conditions on the following page and online at **wellsfargo.com/preferredterms.**

Mortgage Loan Number:_____    Date Signed: _____

Customer Name: _____    Customer Signature:_____

*Preferred Payment Plan* **Terms and Conditions**

- I authorize Wells Fargo, its authorized representatives and service providers to initiate electronic withdrawals from my designated account to make monthly payments on my mortgage.
- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payment until I receive this confirmation and electronic withdrawals begin.
- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of monthly payments, when payments are due, the applications of payments, the assessment of late charges or the determination of delinquencies. I must maintain sufficient funds in my account for withdrawal of my monthly payment.
- I understand that withdrawn funds will not be applied to my mortgage until sufficient funds have accumulated for a full monthly payment to be made.
- I understand the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.
- I understand that I must provide Wells Fargo notice of at least 10 days for any requests to modify, change or terminate participation in this program. I understand that if I modify, change, or terminate participation in the program, I may not realize the benefits.
- I agree to be bound by the program's Terms and Conditions, which are stated here and online.

**For questions about your enrollment, please retain this form and call 1-866-386-8519, using authorization code AMPTAC.**

1. Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts:
- Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party
- A total of six transfers and/or withdrawals in a month including: those listed above, preauthorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone

For more information, please refer to your account agreement with your financial institution. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2009 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Doc ID 14383 3/11

HMG5218



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

---

| | | |
|---|---|---|
| IN RE | ) | CHAPTER 11 |
| | ) | |
| ANTHONY SEALY, | ) | CASE NO. 10-33801 (AMN) |
| | ) | |
|     Debtor. | ) | SEPTEMBER 22, 2017 |

### PROPOSED ORDER GRANTING DEBTOR'S REQUEST FOR ENTRY OF DISCHARGE

Upon the Request by the Debtor for Entry of Discharge dated September 22, 2017 (the "Request"), and due notice of the Request having been given and good cause appearing thereby, it hereby:

**ORDERED** that the Debtor, Anthony Sealy be and hereby is discharged.

Dated at New Haven, Connecticut this _____ day of _____, 2017.

By_____
      The Honorable Ann M. Nevins
      United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | CHAPTER 11 |
| | ) | |
| ANTHONY SEALY , | ) | CASE NO. 20-3801 (AMN) |
| | ) | |
| DEBTOR. | ) | SEPTEMBER 22, 2017 |

## NOTICE OF CONTESTED MATTER RESPONSE DATE

Suzanne B. Sutton, counsel for the debtor, Anthony Sealy (the "Movant"), has filed a

Request for Entry of Discharge (the "Contested Matter") with the U.S. Bankruptcy Court.

Notice is hereby given that any response to the Contested Matter must be filed with the Court no

later than October 6, 2017.*  In the absence of a timely filed response, the proposed order in the

Contested Matter *may* enter without further notice and hearing, *see*, 11 U.S.C. § 102(1).

Date: September 22, 2017

THE DEBTOR,
ANTHONY SEALY

/s/ Suzanne B. Sutton
Suzanne B. Sutton, Esq. (ct03506)
COHEN AND WOLF, P.C.
657 Orange Center Road
Orange, CT 06477
Telephone: 203-298-4066
Facsimile: 203-298-4068
Email: ssutton@cohenandwolf.com

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three
days are added after the response date set in this notice.

## <u>CERTIFICATION OF SERVICE</u>

In accordance with the applicable provisions of the Federal Rules of Bankruptcy

Procedure, 2002 and 7004, the undersigned certifies that on the 22nd day of September, 2017, the

following documents were served on the U.S. Trustee and all appearing parties via the court's

electronic filing system and by first class mail on the parties listed below.


1. **<u>Documents Served:</u>**

    1.  Request

    2.  Proposed Order

    3.  Notice of Contested Matter

***Via Electronic Notice of Filing:***

    Tracy F. Allen    BKECF@bmpc-law.com

    Peter A. Berdon    peter@bymlaw.com

    Andrew S. Cannella    bkecf@bmpc-law.com

    William R. Dziedzic    BKECF@bmpc-law.com

    Ana M. Fidalgo    lisa@charlesthompsonlaw.com

    Gerald A. Gordon    Gerry.gordon@norcom-usa.com

    Nathan Grant Johnson    njohnson@shslawfirm.com, bkdept@shslawfirm.com

    Martin A. Mooney    tshariff@schillerknapp.com, tshariff@ecf.courtdrive.com

    Martin A. Mooney    TWright@deilylawfirm.com

    Claudia M. Sklar    csklar@oamlaw.com, vricci@oamlaw.com

    Linda St. Pierre    bankruptcy@huntleibert.com, lstpierre@huntleibert.com

*Via U. S. First Class Mail:*

Anthony Sealy
25 Parmelee Avenue
New Haven, CT 06511

Holley L. Claiborn
Office of The United States Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

Groob, Ressler & Mulqueen, P. C
Attn:  President
123 York Street
New Haven, CT 06511

Steven E. Mackey
Office of the U.S. Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

Vincent M. Marino, Esq.
Cohen and Wolf, P.C.
657 Orange Center Road
Orange, CT 06477

PRA Receivables Management, LLC for
Portfolio Recovery Associates, LLC
Attn:  President
P.O. Box 41067
Norfolk, VA 23541-1067

Joan E. Pilver
Office of the Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

Specialized Loan Servicing, LLC
Attn:  President
8742 Lucent Blvd Suite 300
Highlands Ranch, CO 80129

THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW
c/o Shellpoint Mortgage Servicing
Attn:  President
PO Box 10826
Greenville, SC 29603

/s/ Suzanne B. Sutton
Suzanne B. Sutton